**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DALY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | **Case No.** |
| v. | ) ) | |
| FITLIFE BRANDS, INC. d/b/a NUTROLOGY, | ) ) ) | |
| Defendant. | ) ) | |

**<u>NOTICE OF REMOVAL</u>**

Defendant FitLife Brands, Inc. d/b/a Nutrology ("FitLife"), pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, hereby submits this Notice of Removal of a civil action filed in the Circuit Court of Cook County, Illinois to this Court. This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005 ("CAFA"). In support of this Notice of Removal, Defendant respectfully shows this Court the following:

1.    On January 6, 2022, Plaintiff John Daly commenced this action by filing a complaint against FitLife in the Circuit Court of Cook County, Illinois, entitled, *John Daly v. FitLife Brands, Inc. d/b/a Nutrology*, Case No. 2022-CH-00106 (the "State Court Action"). Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint and all other pleadings that are in the state court file and available to FitLife are attached hereto as **<u>Exhibit 1</u>**.

2.    The Complaint alleges that Plaintiff and putative class members purchased FitLife's All Natural Amino Drink Lemonade flavor, and that putative class members purchased FitLife's All Natural Amino Drink OC Tropical flavor (the "Products").[1]  (Ex. 1, Complaint

---

[1] Although Plaintiff alleges that he purchased All Natural Amino Drink Lemonade flavor, he does *not* allege that he purchased All Natural Amino Drink OC Tropical.  (Compl. ¶ 8.)

("Compl.") ¶ 6.) Plaintiff alleges that FitLife's labeling and advertising of the Products is false and misleading because they are labeled as "all natural" and allegedly contain DL-malic acid (*Id.* ¶¶ 1, 7-9.) Plaintiff claims that the "all natural" statements impaired his and putative class members' ability to choose the type and quality of products to buy. (*Id.* ¶ 16.)

3.      Plaintiff seeks to represent a class of "[a]ll persons within the United States who purchased the Products within five years prior to the filing of the Complaint through the date of class certification." (*Id.* ¶ 29.) Plaintiff also seeks to represent a "subclass" of "[a]ll persons within the State of Illinois who purchased the Products within five years prior to the filing of the Complaint through the date of class certification." (*Id.* ¶ 30.)

4.      Plaintiff asserts the following causes of action: (I) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; (II) common law fraud; and (III) unjust enrichment.

5.      The Complaint identifies FitLife Brands, Inc. d/b/a Nutrology as the sole named defendant.

6.      FitLife has provided notice of the filing of this Notice of Removal to Plaintiff by service of a copy of this Notice of Removal, as required by 28 U.S.C. § 1446(d). A true and correct copy of this Notice of Removal, along with a Notice of that filing, also will be filed with the Clerk of Court for Cook County, Illinois, in accordance with 28 U.S.C. § 1446(d).

## TIMELINESS OF REMOVAL

7.      FitLife's registered agent was served with the Complaint and Summons on January 13, 2022. This Notice of Removal is properly filed within 30 days of January 13, 2022. *Cf.* 28 U.S.C. § 1446(b)(1).

**VENUE**

8.      Venue is proper in this Court because Plaintiff filed this matter in the Circuit

Court of Cook County, Illinois, which lies within the Northern District of Illinois.  *See* 28 U.S.C.

§§ 84(b), 1441(a).

**REMOVAL OF THIS ACTION IS APPROPRIATE UNDER CAFA**

9.      This Court has jurisdiction of this action under CAFA.  *See* 28 U.S.C.

§ 1332(d)(2).  CAFA reflects Congress' intent to have federal courts adjudicate substantial class

action suits brought against out-of-state defendants, expands federal jurisdiction over class

actions, and expressly provides that class actions filed in state courts are removable to federal

court  where:  (i) the putative class contains at least 100 members; (ii) any member of the

putative class is a citizen of a State different from that of any defendant; and (iii) the aggregate

amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. §§

1332(d)(2) & (d)(6).

10.      The Supreme Court has held that, in evaluating removal pleadings to determine if

CAFA jurisdiction is established, district courts should "apply the same liberal [pleading] rules"

as would pertain to other pleadings.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.

Ct. 547, 549 (2014).

11.      As a threshold matter, FitLife denies the material allegations asserted by Plaintiff,

denies that Plaintiff or any absent putative class member is entitled to relief, and denies that the

prerequisites of class certification could be satisfied in this case.  However, the pleadings and

evidence submitted herewith establish that the CAFA jurisdictional requirements are, by a

preponderance of the evidence, satisfied.  *See BookXchange FL, LLC v. Book Runners, LLC*, No.

19 CV 506, 2019 WL 1863656, at *3 (N.D. Ill. Apr. 25, 2019) (quoting *Carroll v. Stryker Corp.*,

658 F.3d 675, 681 (7th Cir. 2011)) ("District courts should not get bogged down at the time of removal in evaluating claims on the merits to determine if jurisdiction exists").

A.      **The Putative Classes Consist of at Least 100 Members**

12.     CAFA requires that the putative class consist of at least 100 members.  28 U.S.C. §1332(d)(6).

13.     Plaintiff claims to bring this action on behalf of "all persons within the United States who purchased the Products within five years prior to the filing of the Complaint through the date of class certification" and on behalf of "all persons within the State of Illinois who purchased the Products within five years prior to the filing of the Complaint through the date of class certification."  (Compl. ¶¶ 29-30.)

14.     Plaintiff asserts that the members of the classes "are so numerous that joinder of all members is impracticable" and that "[o]n information and belief there are hundreds, if not thousands of individuals in the United States and the State of Illinois who purchased the products within the applicable statute of limitations period."  (*Id.* ¶ 31(a).)

15.     The Seventh Circuit has held that a defendant may "rely on the estimate of the class number set forth in the complaint" for removal purposes.  *See Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 581-82 (7th Cir. 2017) (reasoning that "Illinois Supreme Court Rule 137(a) requires counsel to sign pleadings filed in state court, and that signature certifies 'that[,] to the best of [counsel's] knowledge, information, and belief formed after reasonable inquiry[,] it is well grounded in fact.'").

16.     Accordingly, for removal purposes, Plaintiff's Complaint establishes that this action involves 100 or more putative class members in satisfaction of the first requirement under 28 U.S.C. § 1332(d)(2).

**B.     The Parties are Sufficiently Diverse**

17.     CAFA requires only minimal diversity for the purposes of establishing federal jurisdiction; at least one purported class member must be a citizen of a State different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).

18.     Plaintiff is a natural person and a citizen of Illinois.  (Compl. ¶ 2.)  Additionally, Plaintiff's putative classes purport to include citizens of Illinois and of every State in the nation.  (*Id.* ¶¶ 29-30.)

19.     As shown in the Declaration of Jenna Sinnett, attached as **Exhibit 2**, Defendant FitLife is a Nevada corporation with its principal place of business in Omaha, Nebraska.  (*See* Sinnett Decl. ¶ 4; *see also* Compl. ¶ 3.)  Thus, FitLife is a citizen of Nevada and of Nebraska for CAFA minimal-diversity purposes.  *See* 28 U.S.C. § 1332(c)(1).

20.     Accordingly, minimal diversity between the parties exists.

**C.     The Amount in Controversy Meets the CAFA Threshold**

21.     Lastly, CAFA requires  that the amount in controversy exceed the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2).  The claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the $5,000,000 threshold.  *Id.* § 1332(d)(6).

22.     "When a complaint fails to allege the amount of damages, the removing defendant must only assert 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'"  *Abraham v. State Farm Mut. Auto. Ins. Co.*, No. 19-CV-3028, 2020 WL 1433782, at *3 (N.D. Ill. Mar. 24, 2020) (quoting *Dart Cherokee Basin Operating Co., LLC* , 574 U.S. at 88 (2014)).

23.     Here, the Complaint does not specifically allege the amount of alleged damages purportedly suffered by the putative classes.  Rather, it seeks various generic relief including

"actual damages, punitive damages, injunctive relief, costs, and attorneys' fees"; damages for "stress, aggravation, frustration, inconvenience, emotional distress, [and] mental anguish"; and a "[j]udgment against Defendant in an amount to be determined at trial . . . and [a]ny other relief deemed just and proper by this Court."  (Complaint ¶¶ 42, 48 & p. 14 ¶¶ k-m.)

24.     Plaintiff's request for actual damages and punitive damages alone establishes the plausibility of an amount of controversy in excess of $5,000,000 in this action.

25.     For purposes of evaluating the amount in controversy, but not conceding that Plaintiff could recover any damages, restitution, or other relief, or any such relief in the amount of total sales of the Products, it is plausible that damages or other relief sought by the putative classes could be equal to the total sales amount.

26.     Defendant only recently acquired the rights to and began selling the Products in April, 2021; during the nine month period of April 7, 2021 through December 31, 2021, FitLife sold $70,900.12 in Products.  (Sinnett Decl. ¶ 6.)  Extrapolating these Product sales over the putative class periods to account for Product sales prior to FitLife's acquisition, FitLife estimates that over $472,667.47 of Products were sold over the five-year period preceding the filing of the Complaint.  (*Id.* ¶ 7.)

27.     Under Illinois law, there is no specified cap on punitive damage.  *See Tully v. McLean*, 409 Ill. App. 3d 659, 678, 948 N.E.2d 714, 735 (2011) ("There is no bright-line ratio which a punitive damages award cannot exceed, but rarely will an award greater than a single-digit ratio between punitive and compensatory damages satisfy due process . . . .").  Here, if punitive damages were sought based on a multiplier of 10 times the estimated total sales of the Products, the punitive damages sought would be $4,726,674.67.

28. When the plausible punitive damages figure is combined with the plausible actual damage figure described above, the amount in controversy exceeds the $5,000,000 threshold.

29. Nevertheless, Plaintiff's request for injunctive relief also must be considered in the calculation of the amount in controversy. *See, e.g.*, *Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 274 (7th Cir. 2011) (reversing the district court's ruling that the defendant had not met the amount in controversy requirement and holding that "[t]he cost of prospective relief cannot be ignored in the calculation of the amount in controversy.")

30. Although Plaintiff does not specify what type of injunctive relief he seeks beyond "prohibiting such conduct by Defendant in the future" (Compl. p. 13 ¶ e & p. 14 ¶ l), injunctive relief plausibly could be quite costly to FitLife.

31. For example, if FitLife were ordered to destroy or remove from its inventory and/or the supply and distribution chain existing or near-final Products, FitLife would incur approximately $73,096.49 in lost Product. (Sinnett Decl. ¶ 8.)

32. Moreover, if FitLife were ordered to relabel or reformulate the Products, FitLife estimates it would incur approximately $36,400 in lost revenue based on time out of market and an additional $6,000 associated with the costs of reformulation. (*Id.*)

33. A potential award of attorneys' fees, *e.g.*, under the Illinois Consumer Fraud Act, 815 ILCS 505/10a, further increases the amount in controversy. *See ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 479 (7th Cir. 2011) ("attorneys' fees incurred up to the time of removal could be included in the amount in controversy"). In fact, recent case law in other circuits has based an amount in controversy determination on prospective attorneys' fees, where such fees are authorized by statute. *See, e.g., Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th

Cir. 2019) ("when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.")

34.     Accordingly, and without waiving FitLife's defenses or conceding that Plaintiff is entitled to any such damages, Plaintiff's claims for actual damages, punitive damages, injunctive relief, and attorneys' fees alone (without regard to Plaintiff's claims for other relief) exceed $5,000,000 for purposes of establishing CAFA's amount-in-controversy requirement.

## CONCLUSION

35.     All of the CAFA jurisdictional requirements are met: (i) this action involves 100 or more putative class members; (ii) at least one putative class member is a citizen of a State different from that of FitLife; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2).  The action therefore is properly removed to this Court.  *See*  28 U.S.C. § 1453.

Dated: February 11, 2022

Respectfully submitted,

  */s/ Kelsey Weyhing*

DENTONS US LLP

Michael Duvall (*pro hac vice to be filed*)
Grant Ankrom (*pro hac vice to be filed*)
Kelsey Weyhing
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
312-876-8000
michael.duvall@dentons.com
grant.ankrom@dentons.com
kelsey.weyhing@dentons.com

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I caused a copy of the foregoing **NOTICE OF REMOVAL** to be served upon the following via U.S. mail and electronic mail on this 11th day of February 2022:

Steven Perry
Law Offices of Todd M. Friedman, P.C.
111 W. Jackson Blvd, Suite 1700
Chicago, Illinois 60604
Phone: (224) 218-0875
steven.perry@toddflaw.com

          */s/ Kelsey Weyhing*