UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DALY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:22-CV-00762 |
| v. | ) ) | Judge Edmond E. Chang |
| FITLIFE BRANDS, INC. d/b/a NUTROLOGY, | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

In September 2021, John Daly bought a lemonade-flavored amino drink made by fitness-supplement company FitLife Brands. R. 1-1, Compl. ¶ 8.[1] The label touted the drink as an "All Natural Amino Drink," so Daly believed that the drink was, well, all natural. *Id.* ¶¶ 6, 20. Daly now alleges that one of the ingredients in the drink—malic acid—is actually synthetic "dl-malic acid." *Id.* ¶¶ 9–12, 22. Daly filed this proposed class action, alleging that FitLife used false and deceptive advertising by labelling the drink as an "All Natural Amino Drink," in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (for short, the Fraud Act), 815 ILCS 505/1, *et seq.* He also asserts claims for common law fraud and unjust enrichment.[2]

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]The Court has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), which grants federal jurisdiction over proposed class actions in which any member of the proposed class is a citizen of a different state than the defendant (that is, there is minimal diversity) and the matter in controversy exceeds $5,000,000. FitLife is a citizen of Nevada, where it is incorporated, as well as Nebraska, home to its corporate headquarters. Compl. ¶ 3. Daly is a citizen of Illinois. Compl. ¶ 2. The amount in controversy

FitLife moves to dismiss these claims, arguing that Daly lacks standing to pursue some of the claims, and that he has failed to adequately allege the Fraud Act and common law claims. R. 13, Defendant's Mot. As explained in this Opinion, the Court agrees that Daly lacks standing to sue for injunctive relief, but he does have standing to pursue claims on behalf of class members who bought a different flavor of the amino drink. Daly has adequately pleaded the elements of the Fraud Act claims, even under the heightened-pleading standard demanded by Civil Rule 9(b), and the unjust enrichment claim too is adequately pleaded. On the common law fraud claim, however, the Complaint falls short of adequately stating a claim.

## I. Background

In evaluating this motion to dismiss, the Court accepts as true the complaint's factual allegations and draws all reasonable inferences in Daly's favor. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 734 (2011). FitLife sells amino drinks, specifically drinks with branch-chained amino acids (known in the industry as BCAA). *See* Compl. ¶ 8. Two drink flavors (lemonade and tropical) are labeled as an "All Natural Amino Drink," and the drinks are purportedly "plant-based." *Id.* ¶¶ 13–14. FitLife's BCAA natural-labeled drinks are marketed to consumers as a premium, plant-based sports drink *Id.* ¶ 14. According to the Plaintiff, FitLife's packaging and advertising emphasize the natural and plant-based sourcing of its products. *See id.* ¶¶ 13–14. Here are

---

could exceed $5,000,000, given the likely large size of the class and the call for punitive damages in the Complaint. FitLife acknowledges that it is possible for actual damages and plausible punitive damages to exceed the $5,000,000 threshold. R. 1, Notice of Removal ¶¶ 21–34.

examples from the front of the drink containers, with the word "Natural" in large letters and, underneath it, the phrase "All Natural Amino Drink":

 

Compl. ¶ 13. Other terms used on FitLife's advertisement are the following natural-emphasizing words and phrases:

- "3rd party treated"
- "No artificial colors or flavors"
- "No artificial sweeteners"
- "Low heavy metals verified"
- "Scientifically studied ingredients"
- "Non GMO
- "Plant-based ingredients"
- "All natural amino drink"

*Id.* ¶ 14. The label and advertisements also underscore that the drink's natural ingredients are derived from "only natural plant-based sources," which promotes to nutrition-supplement consumers a "natural guilt-free energy and recovery" experience. *Id.*

3

Relying on the label and the advertising, Daly alleges that, in September 2021, he bought one of FitLife's BCAA natural lemonade-flavored drinks. Compl. ¶ 8. Daly asserts that this FitLife BCAA drink, as well as the similarly labeled tropical-flavored drink, are not in fact "all natural," because the drinks allegedly contain dl-malic acid—an artificial amino acid. *Id.* ¶¶ 9–12. According to Daly, FitLife knew that labeling the drinks as "all natural" was fraudulent and deceptive, or at least FitLife should have known of the misleading assertion. *Id.* ¶ 25. Daly also alleges that he paid a premium price for what he now believes is a non-premium product. *Id.* ¶ 19. He points out that FitLife's allegedly false labels caused injury to him and other proposed Class or Sub-Class members, because they would not have bought the drinks, and would not have paid a premium price, if they knew that the products were not truly "all natural." *Id.* ¶ 52. In sum, Daly claims that he and the proposed Class were misled into buying products that did not provide them with the benefit of the bargain for a premium drink. *Id.* ¶ 18.

Daly filed this proposed class action against FitLife, claiming that its "All Natural Amino Drink" advertisement is fraudulent, misleading, and deceptive in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et. seq. Id.* ¶¶ 34–42. He also brings claims for common law fraud and unjust enrichment. *Id.* ¶¶ 43–53. Along with claims on his own behalf, Daly also seeks certification of a nationwide class and an Illinois subclass. *Id.* ¶¶ 29–33. In seeking dismissal of the Complaint, FitLife argues that Daly lacks standing to pursue injunctive relief, and that he has failed to sufficiently allege fraud as a matter of law. As

4

explained in this Opinion, the Court agrees that Daly lacks standing to pursue injunctive relief. Apart from injunctive relief, however, Daly has adequately pleaded the Fraud Act claims, even under the heightened-pleading standard demanded by Civil Rule 9(b). The unjust enrichment claim also survives. In contrast, Daly has not adequately pleaded a fraud claim under Illinois common law.

FitLife also argues that Daly cannot bring claims on behalf of those class members who bought the tropical flavor, rather than the lemonade flavor that Daly bought. FitLife frames this as a standing issue, but as explained in the Opinion, it is really a premature challenge to the propriety of class certification under Civil Rule 23. The mere difference in flavor does not bear on the concrete and particularized injury that Daly says he suffered. Before getting to all of these issues, the Opinion sets for the pertinent standards of review.

## II. Standards of Review

### A. Article III Standing (Rule 12(b)(1))

"Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). The plaintiff bears the burden of establishing subject matter jurisdiction, which includes the requirement of standing. *Id.* Likewise, "each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (alterations omitted) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Civil Rule 12(b)(1) is the vehicle by which a defendant can challenge subject matter jurisdiction

5

in a motion to dismiss. When evaluating a dismissal motion under this Rule, the district court "must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). That said, when a key jurisdictional fact is disputed, the Court can also examine the record, beyond the allegations contained in the pleadings, to determine whether jurisdiction is proper. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

### B. Adequacy of Claim (Rule 12(b)(6) and Rule 9(b))

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere conclusions. *Iqbal*, 556 U.S. at 679.

In the ordinary course under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud

6

must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). And Rule 9(b)'s heightened standard applies to fraud claims brought under the Illinois Consumer Fraud and Deceptive Business Practices Act to the extent that the claim is premised on fraud. *See Pirelli v. Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citation omitted). Thus, Rule 9(b) requires a complaint, very generally speaking, to "state the identity of the person making the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up).[3] Put differently, generally, a complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–42 (internal quotation marks and citation omitted). Still, context—that is, the overall factual setting of a claim—is important in evaluating what level of detail is required under Rule 9(b).

### III. Analysis

### A. Standing for Injunctive Relief

With the standards of review in place, the Court turns to the merits of FitLife's dismissal motion. Daly's standing to pursue *monetary* damages is not in doubt. It is

---

[3] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

7

his further pursuit of injunctive relief against FitLife that runs aground on standing. Article III standing for one form of relief does not automatically encompass another. That is, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), and describing the holding of that case as "notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief"). To have standing to pursue injunctive relief, Daly must show that he *personally* faces—*going forward*—a "real and immediate threat of future injury" from FitLife's allegedly false labels. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (cleaned up) (citing *Lyons*, 461 U.S. at 102). The equitable remedy of injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again …." *Lyons*, 461 U.S. at 111. Here, Daly seeks injunctive relief against FitLife's advertising under the Illinois Fraud Act, as well as under common law fraud and unjust enrichment theories. Compl. ¶¶ 42(a–g), 48(a–g), 53(h–n).

In challenging Daly's standing to pursue injunctive relief, FitLife argues that Daly has not adequately alleged that *he* faces the risk of *future* harm. FitLife underscores the fact that Daly now knows all about the allegedly deceptive advertising, and so cannot be hoodwinked in the future. R. 14, Def.'s Mem. at 12–13. This is right: when a consumer knows about the allegedly false advertising, then that particular consumer is no longer at risk of future harm. *Freeman v. MAM USA Corp.*, 528 F.

8

Supp. 3d 849, 857 (N.D. Ill. 2021) (holding that the plaintiff-consumer had no standing to seek injunctive relief, even in a proposed class action, because the plaintiff already knew of the allegedly deceptive advertising).

In response, Daly argues only that his interest in later buying one of FitLife's amino drinks qualifies him for injunctive relief, because without an injunction he will be harmed by FitLife's labeling practices or its alleged use of synthetic ingredients. Compl. ¶ 24. To support this contention, Daly cites two district-court cases from within this circuit and one Ninth Circuit case. Daly's leading case is *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1110 (E.D. Wis. 2016). But *Le* is distinct from this case. In *Le*, the plaintiff-consumer alleged that department store Kohl's engaged in "company-wide, pervasive, and continuous" false advertising via the publication of deceptive prices. *Id.* at 1109–10. The district court concluded that the plaintiff himself could in fact again suffer harm from Kohls' advertising, because the plaintiff did not know with precision—as to both product line or time of year—the extent of the deceptive pricing. *Id.* at 1110 ("[S]hould Le be 'aware' that housewares are deceptively priced, while men's apparel is not? Should Le be 'aware' that Kohls' holiday sales are more egregiously deceptive than their day-to-day offers?"). So *Le*'s holding is inapt here, because Daly does not allege the same sort of widespread false advertising across time and various product lines. Rather, Daly limits his challenge to FitLife's labels on just two flavors of amino drinks.

The second district-court case cited by Daly is *Muir v. NBTY, Inc.*, 2016 WL 5234596, at *10 (N.D. Ill. Sept. 22, 2016). There, the plaintiff alleged that nutritional

supplement maker NBTY was misbranding its herb supplement because the supplements contained less of a particular ingredient than the product labeling claimed. *Id.* at \*1–2. *Muir* held that injunctive-relief standing still applied, at least through the pleading stage, because the plaintiff alleged that the defendants continued to engage in false advertising. *Id.* at \*10. It is possible that *Muir* was premised on the specific fact that the alleged falsity there was the *amount* of a particular ingredient, a fact that the plaintiff would not readily be able to discern. Here, however, Daly now knows how FitLife interprets "All Natural Amino Drink" (more on that in the merit-analysis below), so he will not be fooled again.

Lastly, Daly cites the Ninth Circuit's holding in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–72 (9th Cir. 2018). The plaintiff-consumer in *Davidson* alleged that certain sanitary and cleaning wipes sold by the defendant were not truly "flushable" as advertised. *Id.* at 961. In the face of the manufacturer's challenge to standing for injunctive relief, the Ninth Circuit held that the plaintiff still faced the threat of future injury, because she still wanted to buy flushable wipes from the manufacturer. *Id.* at 971. Again, arguably the distinction from Daly's case here is that he knows that FitLife interprets "All Natural Amino Drink" to cover a synthetic ingredient (that is the allegation anyway), whereas the term "flushable" is more ambiguous. In any event, this Court is bound by the Seventh Circuit's approach, which demands that the plaintiff establish, beyond mere conjecture, the likelihood that future injury will result without an injunction. *See Simic,* 851 F.3d at 738 ("To have standing for prospective relief, a plaintiff must face a 'real and immediate' threat of future

injury as opposed to a threat that is merely 'conjectural or hypothetical.'") (citing *Lyons*, 461 U.S. at 102).[4] The aspect of the Complaint seeking injunctive relief is dismissed without prejudice for lack of Article III standing.

## B. Standing for Unpurchased Products

Next, FitLife challenges Daly's standing to pursue any type of relief based on the alleged mislabeling of the amino-drink flavor that he did *not* buy, that is, the tropical flavor. R. 14, Def. Mem. at 11–12. Daly responds that he may premise the claims on both flavors—lemonade and tropical—because the drinks are "substantially similar," so he may represent tropical-flavor buyers in this class action. Compl. ¶¶ 6–7, 29–30; R. 22, Pl.'s Resp. at 8–10.

Courts in this district differ on how to evaluate a plaintiff's standing for unpurchased products in proposed class actions. Several courts have permitted claims for unpurchased products to survive until the class-certification stage, which is when

---

[4]In *Davidson*, the Ninth Circuit also noted (without relying on it as a rationale for the holding) that "anomalies" would arise if injunctive-relief standing were not applicable in false-advertising cases. 889 F.3d at 970. *Davidson* asserted that rejecting standing in those cases would undermine state consumer-protection laws. But nothing would prevent a consumer from seeking injunctive relief in state court. *Freeman*, 528 F. Supp. 3d at 858 ("Article III standing is a requirement for federal-court subject matter jurisdiction; it does not constrain state-court jurisdiction.") (citing *Lyons*, 461 U.S. at 113 ("the state courts need not impose the same standing or remedial requirements that govern federal court proceedings")). Also, state attorneys general might have authority to seek injunctive relief against deceptive practices in state court. *Id.* (citing 815 ILCS 505/7(a)). Competitors too might be able to seek injunctive relief under consumer-protection statutes. *Id.* (citing 815 ILCS 510/3). "Last but not least, as a practical matter, if a consumer-products maker … is held liable on the merits for past harm (that is, via monetary damages), then almost surely the company would stop the challenged practice lest suit after suit be brought against it for more and more monetary damages. In any event, the bottom line is that public-policy concerns, no matter how compelling, cannot trump the Article III standing requirement." *Id.*

the plaintiff must demonstrate that the unpurchased products are substantially similar to those purchased.[5] Others have rejected applying the substantial-similarity test altogether. *See Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021) (collecting cases) (asserting that the majority of "Northern District of Illinois courts that have addressed this issue have determined that class-action plaintiffs are prohibited from overcoming the requirements of Article III standing by simply arguing that non-purchased products are substantially similar to purchased products"). And some courts more specifically hold that "[w]hether the named plaintiffs 'may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.'" *Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 408 (N.D. Ill. 2021) (quoting *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 722 (N.D. Ill. 2016) (collecting cases)).

This Court agrees with the latter approach, which distinguishes between Article III standing and class-certification requirements. The Seventh Circuit has explained that "standing and entitlement to relief are not the same thing." *Arreola v. Godinez*, 546 F.3d.788, 795 (7th Cir. 2008). Specifically, "the law does not preclude a

---

[5] *See Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017) (citations omitted); *Mednick v. Precor, Inc.*, 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2014) (explaining that a majority of courts that have considered the issue "hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar") (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013)); *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *5 (N.D. Ill. July 19, 2017).

plaintiff from filing suit simply because some forms of relief may be unavailable, or indeed because in the end he cannot prove that he is entitled to any relief." *Id.* To satisfy the basic Article III standing requirement, Daly need only allege a concrete and particularized injury based on FitLife's conduct that is likely redressable by a favorable judicial decision. *See Carney v. Adams*, 592 U.S. —, 141 S.Ct. 493, 498 (2020) (collecting cases). He has done so. Daly now seeks money damages for buying the allegedly mislabeled drink—and he seeks to represent a class seeking money damages, including those who bought a different flavor with the *same* label. Unlike the mismatch between money damages and injunctive relief, which sunk Daly's injunctive-relief claim, here Daly has suffered a monetary injury, thus satisfying the Article III standing requirement. So whatever mismatch there might be between what drink flavor Daly bought and what other class members bought, "the proper remedy for this shortcoming is not dismissal of the entire action, but rather an order denying class certification and permitting the case to continue as an individual suit," *see Payton v. Cty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002). Whether Daly may go on to represent class members for the tropical flavor will be analyzed at the certification-evaluation stage.

### C. The Fraud Act (Count 1)

In Count One, Daly alleges that FitLife violated the Fraud Act by labeling the drinks as "All Natural Amino Drink" even though the drinks contain synthetic malic acid. Compl. ¶¶ 34–42. To adequately state a fraud-based claim under the Fraud Act, Daly must allege, with particularity, that: (1) FitLife committed a deceptive act or

practice; (2) the deceptive act or practice occurred in the course of conduct involving trade or commerce; (3) FitLife intended that Daly rely on the deception; and (4) the deceptive act caused Daly actual damages. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). A plaintiff may recover under the Act for unfair or deceptive conduct. *Crichton v. Golden Rule Insurance Co.*, 832 N.E.2d 843, 853 (Ill. App. Ct. 2005). Although a practice can be unfair without being deceptive, *People ex rel. Hartigan v. Knecht Services, Inc.*, 575 N.E. 2d 1378, 1385 (Ill. App. Ct. 1991), Daly's allegations are premised on fraud—that FitLife knows that it is mislabeling its products as devoid of synthetic ingredients—and hinge on a finding of a deceptive practice by FitLife, despite the Complaint's passing references to an unfair practice. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014); Compl. ¶¶ 7(iv), 31(iv), 42(c), 48(c), 53(c).

Daly argues that the "All Natural Amino Drink" label on FitLife's products is deceptive because the malic acid listed as an ingredient is synthetic and a reasonable consumer expects a product with the "All Natural Amino Drink" label to contain only natural, non-synthetic ingredients. Compl. ¶ 48; Pl.'s Resp. at 6. FitLife counters that a reasonable consumer would not understand the label to convey that "the entire BCAA Natural product is 'all natural,' but rather that it provides 'all natural' amino acids that can be used to create an 'all natural amino drink.'" Def.'s Mem. at 6. So, FitLife argues, Daly's focus on the artificiality of malic acid is beside the point because "malic acid is not an amino acid." *Id.* FitLife also relies on additional labels on the product, which FitLife asserts appropriately clarify the "all natural amino drink"

14

statement on the front label. *Id.* at 7. The other labels include a "Supplement Facts" label, which lists only amino acids, and other statements, such as "No Artificial Colors and Flavors" and "No Artificial Sweeteners," which FitLife maintains would be rendered superfluous if the products were already labeled as entirely "all natural."

Whether a product label, such as the one examined here, deceives a reasonable consumer is often a question of fact. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 479 (7th Cir. 2020) (collecting cases). But, to be sure, not always. A case should not survive a dismissal motion unless the challenged statement plausibly could mislead the reasonable consumer. *Id.* at 477 ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified.") (citations omitted). "Courts apply a 'reasonable consumer' standard to analyze the likelihood of deception." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). So, just a bare, conclusory allegation that a product label misled a particular plaintiff is not adequate to state a Fraud Act claim. A reasonable, non-fanciful interpretation of a challenged label that can mislead a significant portion of the general consuming public is what matters. *See Bell*, 982 F.3d at 477–78.

At the motion-to-dismiss stage, the Court examines Fraud Act claims using a "practical and fact-intensive" approach. *Bell*, 982 F.3d at 493. And analysis of "the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Benson*, 944 F.3d at 646 (alteration in original)

15

(quoting *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)). In moving to dismiss, FitLife contends that it made no false or misleading representation about whether the drinks contain synthetic ingredients. But this argument fails for two reasons.

First, the challenged label and surrounding labels on the product plausibly would be interpreted by a reasonable consumer to mean what it says: the product creates an "All Natural Amino *Drink*" (emphasis added). For FitLife, the only reasonable interpretation is that "all natural" refers *solely* to amino acids. But the label does not say "All Natural Amino Acids." If, as FitLife argues, its purpose in crafting this label was meant to convey that *only* the amino acids were all natural, then a reasonable consumer would be left wondering why FitLife chose to use the broader word "drink" rather than the more specific word "acids." And it is not as if there is some airtight rule of grammar (and certainly not one that reasonable consumers carry around in their minds) that applies the adjectival-phrase "all natural" to just "amino," rather than to "amino drink." Maybe discovery, including expert discovery, will show otherwise, but Daly gets the benefit of reasonable inferences at this stage.

To be sure, some of the other labels on the drinks do provide additional detail on the actual ingredients in the mix. Def.'s Mem. at 3. For example, in the Supplement Facts, the labels identify the three branched-chain amino acids—leucine, isoleucine, and valine—included in the product, along with a statement that these are in their natural forms. *Id.* But this alone does not remove the significant risk that

16

reasonable consumers will interpret the front-of-product label as asserting that the drink—all of it—is all natural.

Second, FitLife contends that because "all natural" can only be referring to amino acids in this context, and malic acid is not an amino acid, the label is "literally true." Def.'s Mem. at 8–9. But even if the Court assumes for argument's sake that "all natural" modifies only amino acids, a statement that is literally true can still be misleading. Even a true statement can be misleading if the true statement generates a false impression amongst reasonable consumers. *See Bell*, 982 F.3d at 479; *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false."); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761–62 (7th Cir. 2014) (observing that a deceptive-practices claim under the Fraud Act "may be satisfied by proof that a statement is likely to mislead a reasonable consumer, even if the statement is literally true"). FitLife's use of the word "drink" instead of "acids" when it now says that the former really refers to the latter implies that FitLife actively preferred that its label retain some level of ambiguity. This elected ambiguity lends itself to reasonable consumers plausibly forming false impressions about what the "All Natural Amino Drink" label conveys about the product's true makeup.

What's more, context adds to the plausibility that the "all natural" label is misleading to reasonable consumers. The product markings next to the challenged label include blanket statements like "only natural plant-based sources," "no artificial colors or flavors," and "no artificial sweeteners." Compl. ¶¶ 13, 14. FitLife argues that

17

these statements qualify the "All Natural Amino Drink" label rather than promote the perception that the product is itself free from synthetic ingredients. Def.'s Mem. at 7. Maybe that will convince a jury, but at the pleading stage, Daly's proffered plausible interpretation gets the benefit of the doubt. A reasonable consumer could just as easily read these accompanying labels as bolstering, rather than qualifying, Fit-Life's advertisement of an "All Natural Amino Drink." The Fraud Act claim survives.

### D. Common Law Claims (Counts 2 and 3)

Next, FitLife also seeks to dismiss the common law fraud and unjust enrichment claims. FitLife argues that if the Court dismisses the Fraud Act claim, then it must necessarily dismiss the unjust enrichment claim. R. 23, Def.'s Reply at 12 (citing *Cleary v. Phillip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). That is the only defense argument against the unjust enrichment claim. But the Fraud Act claim survived, so the defense argument does not. The unjust enrichment claim moves forward.

On the common law fraud claim, under Illinois law, the plaintiff must adequately plead "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996)).

FitLife takes aim at the elements of knowledge and intent-to-induce. On knowledge and intent, Daly alleges that because FitLife hires professional chemists

18

to create its products and because these chemists know that malic acid is synthetic, FitLife intended to falsely advertise the drink as all natural. Compl. ¶¶ 25–27. FitLife counters that these allegations are conclusory and do not meet Civil Rule 9(b)'s heightened pleading standard. Def.'s Reply at 12–13.

Daly maintains that his allegations go beyond making a bare inference of the required mental states and are enough to survive dismissal. Pl.'s Resp. at 12–13. He argues that these allegations sufficiently plead knowledge and intent because Rule 9(b) permits intent and knowledge to be "pleaded generally." Pl.'s Resp. at 12. It is true that Rule 9(b) says that knowledge and intent "may be alleged generally." Fed. R. Civ. P. 9(b). At the same time, however, Rule 9(b) does require "particularity" in describing the "circumstances constituting fraud," Fed. R. Civ. P. 9(b). That is why the Seventh Circuit generally does require concrete factual detail in describing the fraud. *Pirelli*, 631 F.3d at 441–42. As several district courts have held when evaluating similar mental-state allegations,[6] it is one thing to know something about a

---

[6]*See Daly v. Glanbia Performance Nutrition, Inc.*, 2023 WL 5647232, at \*8 (N.D. Ill. Aug. 31, 2023) (dismissing Daly's and his counsel's near-identical mental-state arguments as conclusory in a separate class action in this district); *Cristia v. Trader Joe's Co.*, 2022 WL 17551552, at \*7 (N.D. Ill. Dec. 9, 2022) (holding that a defendant retailer's knowledge about its product alone is not enough to suggest fraudulent intent); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at \*8 (N.D. Ill. Mar. 1, 2022) (holding the plaintiff's allegation that "defendant's fraudulent intent 'is evinced by its knowledge that the Product was not consistent with its representations'" was inadequate to plead scienter under Rule 9(b)); *Rudy v. Family Dollar Stores, Inc*, 583 F. Supp. 3d 1149, 1165 (N.D. Ill. 2022) (same); *Davis v. Ricola USA, Inc.*, 2022 WL 4131588, at \*6 (C.D. Ill. Sept. 12, 2022) (same); *Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625 (S.D. Ill. 2022) (same).

product that ends up not strictly matching the product's label. But it is quite another to allege that a debate over how the adjectival phrase "all natural" applies to the words that follow it suggests an intent to *defraud*. Yes, there is more than enough allegations to plausibly suggest that FitLife intended consumers to *rely* on the label. But what is missing is particularity to support the notion that FitLife intended to *defraud* consumers. The current allegations fall short under Rule 9(b).

Having said that, Daly's request to amend the complaint to fix deficiencies, Pl.'s Resp. at 14, is granted. FitLife opposes the request, but Civil Rule 15(a)(2) instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). And in this circuit, if a complaint initially fails to state a claim for relief, then the plaintiff is ordinarily granted an opportunity to amend the complaint if the issue is correctable. *See, e.g.*, *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). There is no reason to think that it would be futile to amend the complaint, given that the deficiency is a factual one, rather than some as-a-matter-of-law defect. Nor is there any reason to believe that Daly's request to amend is "for reasons such as undue delay, bad faith, or dilatory motive." *See Johnson v. Cypress Hill*, 641 F.3d 867, 871–72 (7th Cir. 2011) (listing reasons for which a district court may deny leave to amend). So if Daly really believes that there is a way to fix the common law fraud claim, then he may file a First Amended Complaint on or before October 30, 2023. (There is no need to replead the request for injunctive relief, because the Court has already held that there is no standing to do so.).

20

## IV. Conclusion

FitLife's motion to dismiss is granted as to the common-law fraud claim (Count 2), but without prejudice to filing an amended complaint by October 30, 2023. Daly's request for injunctive relief is dismissed. But the Fraud Act and unjust enrichment claims (Counts 1 and 3), including for both flavors (lemonade and tropical), may move forward. The answer deadline on the complaint is October 23, 2023. Rule 26(a)(1) disclosures shall be made by November 6, 2023. The tracking status hearing of October 13, 2023, is reset to November 17, 2023, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the parties shall file a status report with a proposed discovery schedule on November 9, 2023 (as well confirming the service of Rule 26(a)(1) disclosures).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 28, 2023